CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
November 26, 2025
Laura A. Austin, Clerk
BY: /s/ K. Lokey
    DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| MICHAEL REDWINE,<br><br>        *Plaintiffs*,<br><br>v.<br><br>THE RECTOR AND VISITORS OF THE UNIVERSITY OF VIRGINIA, ET AL.,<br><br>        *Defendants*. | CASE NO. 3:25-CV-00017<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

  Plaintiff Michael Redwine brings this suit against The Rector and Visitors of the University of Virginia (UVA) and three of its employees, Sue Galloway, Reba Childress, and Jill Melton. Dkt. 7. He alleges Defendants violated: (i) the Americans with Disabilities Act (ADA)(Count I); (ii) the Family and Medical Leave Act (FMLA)(Count II); (iii) Section 504 of the Rehabilitation Act (Rehab Act)(Count III); and (iv) the Virginia Fraud and Abuse Whistle Blower Protection Act (FAWPA)(Count IV). Defendants move to dismiss the amended complaint for failure to state a claim. Dkt. 16. The Court will grant Defendants' motion to dismiss because the amended complaint is deficient in allegations of fact to support a claim for relief. *Id.* The Court will dismiss as moot the remaining pending motions. Dkts. 25, 29.

## LEGAL STANDARD

  To survive a motion to dismiss under 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When deciding a motion to dismiss, a court must accept the factual allegations as true

and must draw all reasonable inferences in the plaintiff's favor. *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty.*, 684 F.3d 462, 467 (4th Cir. 2012). A court need not "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) (quotation marks omitted). Although a complaint "does not need detailed factual allegations" to survive a 12(b)(6) motion, a plaintiff must provide "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action" to survive a 12(b)(6) motion. *Twombly*, 550 U.S. at 555.

## BACKGROUND

The facts alleged in Redwine's amended complaint must be accepted as true for the purposes of a motion to dismiss. Dkt. 7; *see King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

Redwine was employed by UVA's Nursing Professional Development Services ("NPDS") as an "Instructional Design Specialist" from January 10, 2022 until June 2023. Dkt. 7 at 2; Dkt. 23 at 19.[1] According to his amended complaint, at the time of his hiring, he disclosed that he had disabilities "qualifying" him for an accommodation. *Id.*[2] The disabilities include "PTSD, Major Depressive Disorder, Generalized Anxiety Disorder, agoraphobia, and post-COVID fatigue." Dkt. 7 at 2. UVA initially granted his accommodation request, which included occasional remote work. *Id.*

---

[1] Redwine made several filings which lack page, paragraph, or exhibit numbers. Therefore, his page numbers are cited based on the identifications affixed by the docketing system to the top of each page.

[2] In his response and proposed sur-reply, Redwine offers new facts to support his claims. Given his pro se status, the Court will consider all the facts included in his responsive pleadings for purposes of resolving this motion and will refer to his amended complaint and responsive pleadings collectively as his "amended complaint." Dkts 7, 23, 29.

On February 17, 2023, while at work, Redwine "collapsed on the stairs" due to fatigue while walking to his "second-floor office." Dkt. 23 at 19. This incident led to his request for additional "flexible hours and remote work." Dkt. 23 at 11. According to his complaint, NPDS director Sue Galloway denied his request and told him to "apply for FMLA leave if he could not return full-time." *Id.* Four days later, he began FMLA leave and simultaneously submitted a "formal ADA accommodation request[]." *Id.*

On March 9, 2022, he met with Galloway to discuss his ADA accommodation request. Dkt. 23 at 15. He sought either (a) "2-4 hours in-office followed by a 1–2-hour rest period"; or (b) "up to 6 hours/day remote work" for six months. *Id.* During their meeting, Galloway "offered to implement [these] accommodations—but only if [Redwine] returned [to work] full time." *Id.* On April 4, 2022, Redwine resumed in-person work, "under a reduced, intermittent FMLA schedule." *Id.* That same day, he met with his "supervisors" to discuss the nature of his return. *Id.* According to Redwine, during this meeting, his "supervisors" made statements regarding his reduced hours including: "I don't think your doctor has said you cannot work more than that" and "I hired somebody full-time and you're not." Dkt. 23 at 16. He further alleges that his supervisors made disparaging comments such as: "you need to understand and embrace, whether you like it or not," that "I am your boss" and "you're going to work during our time." Dkt. 23 at 19.

After he returned to work intermittently beginning on April 4, 2022, he alleges he: (i) was denied a "ground-level office despite documented medical need"; (ii) experienced "heightened scrutiny and micromanagement"; (iii) received "critical remarks" referencing his medically related absences; and (iv) was "placed on unpaid administrative leave and later terminated." Dkt. 23 at 19. He was ultimately terminated in June 2023. *Id.*

3

## ARGUMENT

### A. Redwine's ADA and Rehab Act Claims are Barred for Failure to File within 90 Days of Receiving the EEOC's Right-to-Sue Letter

Under both the Rehab Act and the ADA, a plaintiff must file suit within 90 days of receiving a right-to-sue letter from the EEOC. 42 U.S.C. §§ 2000e-5(f)(l), 12117(a) (ADA); *Stewart v. Iancu*, 912 F.3d 693, 698 (4th Cir. 2019) (Rehab Act). The 90-day filing requirement is strictly construed. *See Harvey v. City of New Bern Police Dep't,* 813 F.2d 652, 654 (4th Cir. 1987) (finding that the delivery of notice to plaintiff's home where it was received by plaintiff's wife triggered the limitations period even though plaintiff did not become aware of letter until five days later). A district court, however, is required to "conduct a thorough examination of the facts to determine if reasonable grounds exist for an equitable tolling of the filing period." *Id.* at 654. The limitations period will otherwise begin to run on the date of "constructive receipt of the notice," *i.e.*, "the date of delivery, 'if the date of delivery and the date of actual receipt are substantially different.'" *Asbury v. City of Roanoke*, 599 F. Supp. 2d 712, 716 (W.D. Va. 2009) (citation omitted).

Here, the EEOC uploaded Redwine's right-to-sue notice to his case portal on December 29, 2024. Dkt. 23 at 7. Redwine asserts that he "attempted to access the EEOC portal but encountered login errors." *Id.* Knowing his sister had access to his portal, he asked her to forward him the documents. *Id.* According to Redwine, because his sister was traveling "for the holidays, she was unable to [send him the letter] until January 4, 2025." *Id.*

Redwine contends that he had a "good faith [belief] that his filing window ran from January 4, 2025," based on when he "actually received" the notice from his sister. *Id.* The Fourth Circuit, however, has routinely upheld the rejection of the "actual receipt" argument. *See Watts–Means v. Prince George's Family Crisis Ctr.,* 7 F.3d 40, 42 (4th Cir.1993) (holding that "the

limitations period is triggered when the Postal Service delivers notice to a plaintiff that the right-to-sue letter is available for pickup, and not when the letter is actually picked up"); *Harvey*, 813 F.2d at 654 (finding no basis for tolling when plaintiff "knew of the right to sue letter within six days of its arrival and this left him eighty-four days to file his complaint"); *see also Asbury*, 599 F. Supp. 2d at 719–20 (W.D. Va. 2009).

Here, while Redwine contends he did not receive his right-to-sue letter from his sister until six days after it was uploaded to his case portal, he still had eighty-four days to file his Complaint within the statutory deadline. Because Redwine has offered no facts to support equitable tolling of the statutory deadline, his filing deadline must be calculated from when his EEOC right-to-sue letter was posted, not when he received it from his sister. As such, his complaint was not filed within 90-days of receiving the EEOC notification, and therefore, untimely. Dkt. 23 at 8.[3]  Accordingly, the Court dismisses Counts I and II of the amended complaint with prejudice.

### B. Redwine's FMLA Interference and Retaliation Claims

The FMLA grants covered employees "12 work weeks of leave during any 12-month period" if an employee has "a serious health condition that makes [him] unable to perform the functions" of his position. 29 U.S.C. § 2612(a)(1). Plaintiffs may bring two types of claims under the FMLA: (i) interference claims, which arise under 29 U.S.C. § 2615(a)(1) and seek to prevent an employer from "interfere[ing] with, restrain[ing], or deny[ing]" leave; and (ii) retaliation/discrimination claims, which arise under 29 U.S.C.A. § 2615(a)(2) and seek to "protect employees from discrimination or retaliation for exercising their substantive rights." *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 546 (4th Cir. 2006). Redwine brings

---

[3]     90 days from December 29, 2024 was March 29, 2025. As such, Redwine's Complaint needed to be filed by March 29, 2025 to comply with the statutory deadline. Redwine filed his Complaint on April 1, 2025. Dkt. 1.

5

both interference and retaliation claims against Defendants Gallow, Childress, and Melton in their individual capacities. *See Ainsworth v. Loudon Cnty Sch. Bd.*, 851 F. Supp. 2d 963, 972 (E.D. Va. 2012) ("[P]ublic employees may be sued in their individual capacities for alleged violations of the FMLA.") (quoting *Ramey v. Dir., Off. of Workers' Comp. Programs,* 326 F.3d 474, 476 (4th Cir. 2003)).

> a. *Redwine fails to allege sufficient facts to support his interference claim against Galloway, Childress, and Melton.*

To state a claim for interference under the FMLA, Redwine must allege: "(1) he is entitled to an FMLA benefit; (2) that [the Defendants] interfered with his receipt of that benefit; and (3) that the interference caused harm." *Adams v. Anne Arundel Cnty. Pub. Sch.*, 789 F.3d 422, 427 (4th Cir. 2015) (quoting *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 82 (2002)). Acts of interference include "refusing to authorize FMLA leave"; "discouraging an employee from using leave"; or "manipulat[ing]" an employee's job description or work hours in order to avoid responsibilities under the FMLA. 29 C.F.R. § 825.220(b).

According to his amended complaint, on February 17, 2022, Redwine "requested temporary remote work and a reduced schedule due to severe fatigue" but was denied this request and instead was "advised . . . to go on leave." Dkt. 23 at 15. Four days later, he began his FMLA leave. *Id.* Because Redwine actively sought ADA accommodations during this leave period, he met with Galloway to discuss his accommodation request. *Id.* During this meeting she allegedly told him that his requested accommodation schedule would be approved, "but only if he returned [to work] full-time." *Id.* Redwine asserts that "[t]his conversation" with Galloway "supports an interference claim." *Id.* He further contends, in support of his interference claim, that "UVA" interfered with his FMLA rights when it "[m]isreported" his return date and

6

"[d]enied" him access to leave records by informing him that the records could not be provided to him without a subpoena. *Id.*

Turning first to Defendants Childress and Melton, Redwine fails to set forth a single fact suggesting their involvement in the alleged inference of his FMLA rights. Indeed, in order to state a cause of action against defendants acting in their individual capacities, "a plaintiff must show" that the defendants "acted personally" to cause an alleged violation. *See Dale v. N. C. Dep't of Pub. Safety*, 2023 WL 22163 at *2 (W.D.N.C. Jan. 2, 2023) (citing *Vinnedge v. Gibbs*, 550 F.2d 926, 929 (4th Cir. 1977)). Here, Redwine has not alleged facts to permit the Court to plausibly infer that Childress or Melton interfered with his FMLA rights.

Turning next to the interference claim against Galloway, the sole allegation Redwine asserts pertains to the March 9, 2022 meeting where she allegedly told him that his ADA accommodations request would be granted if he returned to work full-time. Dkt. 23 at 15. Redwine conclusively asserts that "this conversation" "supports [his] interference claim," but fails to allege any facts as to how this conversation interfered with his FMLA rights, or how such alleged interference caused him harm. To be sure, he does not contend that he was denied FMLA leave but instead asserts that he was "forced . . . to use FMLA leave." Dkt. 23 at 16. This bare allegation is insufficient to support a cause of action of FMLA interference against Galloway.

To the extent Redwine alleges that "UVA" misreported his return date and would not provide him FMLA records, these allegations, once again, fail to assert *who* engaged in these actions or *how* this alleged interference caused him harm. Redwine has failed to plead sufficient facts for his FMLA interference claim to survive this motion to dismiss. Accordingly, Redwine's interference claim will be dismissed without prejudice.

      b. *Redwine's retaliation claim fails to sufficiently allege that Galloway, Childress, and/or Melton took adverse actions against him.*

7

To state a claim for retaliation under the FMLA, Redwine must allege: "(i) that he engaged in protected activity; (ii) that Galloway, Childress, and/or Melton took adverse actions against him; and (iii) that a causal relationship existed between the protected activity and the adverse employment activity." *See Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 253 (4th Cir. 2015).

Redwine's retaliation claim suffers from the same deficiencies as his interference claim. He alleges he: (i) was denied a "ground-floor office despite documented medical need"; (ii) experienced heighted scrutiny and micromanagement; (iii) was reassigned and denied accommodations despite prior approval; (iv) received "critical remarks" on performance memos "referencing medically related absences"; and (v) was placed on unpaid administrative leave and later terminated. Dkt. 23 at 19. These allegations fail to establish whether Galloway, Childress, or Melton engaged in these purported actions. *See id.* at 18-20. Because he has failed to allege that Galloway, Childress, or Melton "acted personally" to "cause the alleged violation," Redwine's claim cannot survive the motion to dismiss.  *See Dale*, 2023 WL 22163 at *2 (citing *Vinnedge*, 550 F.2d at 929). Accordingly, the Court dismisses Redwine's FMLA retaliation claim without prejudice.

C. **Redwine Fails to Allege a Claim under the FAWPA**

Virginia's Fraud and Whistle Blower Protection Act ("FAWPA") provides that "[n]o employer may discharge, threaten, or otherwise discriminate or retaliate against a whistle blower whether acting on his own or through a person acting on his behalf or under his direction." Va. Code § 2.2-3011(A). The FAWPA defines "Whistle Blower" as "an employee" who makes or demonstrates by clear and convincing evidence that he is about to make a good faith report of

"wrongdoing" to one of the employee's supervisors or an appropriate authority. Va. Code § 2.2-3010.

Once again, his complaint fails to allege that Galloway, Childress, or Melton engaged in wrongdoing or retaliation under the FAWPA. Redwine conclusively alleges the Defendants: (i) "[e]xercised direct supervisory authority over [him]"; (ii) "[r]eceived [his] reports of ADA, FMLA, and policy violations"; and (iii) "[t]ook or participated in adverse employment actions shortly after those disclosures." Dkt. 23 at 21-22. These conclusory allegations fail to establish whether it was Galloway, Childress, or Melton who "discharge[d], threaten[ed], or otherwise discriminate[d] or retaliate[d]" against him in violation of Virginia's FAWPA. Va. Code § 2.2-3011(A). Without more specific allegations, the Court concludes that Redwine has failed to plead sufficient facts to survive the motion to dismiss as to Count IV. Accordingly, the Court dismisses Redwine's FAWPA claim without prejudice.

## CONCLUSION

For the above-stated reasons, Defendants' Motion to Dismiss is **GRANTED**. Redwine's amended complaint is **DISMISSED with prejudice** as to Counts I and III and **without prejudice** as to Counts II and IV. Dkt. 7. The Court further **DISMISSES AS MOOT** Dkts. 25 and 29.

The Clerk's office is hereby directed to send a copy of this memorandum opinion and order to all counsel of record.

Entered this the  26th  day of November, 2025.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE

9